Filed 4/11/22  P. v. Jones CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVION DWAYNE JONES et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B306118<br>(Super. Ct. No. 18CR06985)<br>(Santa Barbara County)<br><br>ORDER MODIFYING OPINION AND DENYING APPELLANTS' REHEARINGS<br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 22, 2022, be modified as follows:

1.  On page 3, first paragraph, lines 12-15 are deleted, beginning with the sentence beginning, "We reverse and remand," on line 12, so that the paragraph ends after "(Stats. 2021, ch. 699, §§ 1-5)"; a new paragraph is then added after "(Stats. 2021, ch. 699, §§ 1-5," which reads:

We strike the firearm finding appended to counts 1 and 2 pursuant to section 12021.5, subdivision (a) (Jones); the

criminal street gang enhancement appended to count 3 (Jones); the two prior prison term enhancements pursuant to section 667.5, subdivision (b) (Washington); and the 10-year gang enhancement appended to count 2 (Jones and Washington).  We reverse and remand for retrial regarding AB 333 and resentencing pursuant to recent changes in section 654 (Assem. Bill No. 518 (AB 518) (Stats. 2021, ch. 441, § 1)), and *People v. Buycks*, *supra*, Cal.5th 857.  We otherwise affirm.

2.  On page 10, first full paragraph, lines 7-8, the following language is added to the beginning of numeral "5)":  "insufficient evidence supports the criminal street gang enhancements; also," so numeral "5)" reads: "5) insufficient evidence supports the criminal street gang enhancements; also, newly enacted legislation, AB 333 …."

3.  On page 16, section V.  The following paragraphs are added to the beginning of section V:

Jones and Washington contend that insufficient evidence supports the criminal street gang enhancements appended to counts 1 through 4 and count 6 because the evidence does not establish that the crimes were committed for the benefit of, at the direction of, or in association with the Front Hood Compton Crips.  (*People v. Soriano* (2021) 65 Cal.App.5th 278 [insufficient evidence to support gang enhancement where defendant merely walking down street with another gang member].)

Sufficient evidence and reasonable inferences therefrom support the gang enhancement finding because Jones and

2

Washington committed the crimes in association with the Compton Crips. (§ 186.22, subd. (b)(1).) Evidence established that Jones and Washington were longtime Crips gang members who traveled to the Santa Barbara area together to commit the present burglary and robbery. Expert testimony established that the primary activities of the Front Hood Compton Crips included residential burglaries and home invasion robberies. Jones and Washington had gang-related tattoos and their social media accounts reflected photographs of them wearing Florida Marlins baseball caps, signifying the Front Hoods Compton Crips gang. Jones and Washington had committed residential burglaries together previously in Los Angeles. In recorded jail conversations, Jones spoke in gang vernacular regarding his gun, used the phrase "on Crip," and discussed the present crimes. Washington stated in a recorded jail conversation that he was not going to be a gang member anymore and warned the person with whom he spoke to stay away from his gang. This evidence is more than " 'a frolic and detour unrelated to the gang.' " (*People v. Weddington* (2016) 246 Cal.App.4th 468, 484.)

Jones asserts that insufficient evidence supports the gang enhancement appended to count 3, carjacking. He relies upon *People v. Ochoa* (2009) 179 Cal.App.4th 650, 662-663 [defendant committed carjacking alone, did not claim responsibility on behalf of gang or announce himself as gang member, show gang signs, or dress in gang clothing].) The Attorney General agrees that insufficient evidence supports the gang enhancement for count 3. We also agree and strike the enhancement for the carjacking count.

3

4.  On page 21, line 3, under DISPOSITION, words are added to numeral "2)," after the word "resentencing," as follows:  "2) resentencing, including the striking of particular sentencing enhancements, as set forth herein…." so the paragraph reads:

> The judgments are reversed and the matters remanded for 1) limited retrial regarding AB 333 and the criminal street gang enhancements and street terrorism count, and 2) resentencing**,** including the striking of particular sentencing enhancements, as set forth herein.  The judgments are otherwise affirmed.

This modification changes the judgment.

Appellant Jones's petition for rehearing is denied.

Appellant Washington's petition for rehearing is denied.

---

GILBERT, P.J.          PERREN, J.          TANGEMAN, J.

4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVION DWAYNE JONES et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B306118<br>(Super. Ct. No. 18CR06985)<br>(Santa Barbara County) |

Defendants break into a house they believe is uninhabited. While ransacking the house, they find its fearful resident hiding in a closet.  We draw upon our Supreme Court's holding in *People v. Anderson* (2011) 51 Cal.4th 989, 991-992, "We hold here that the intent element of robbery does not include an intent to apply force against the victim or to cause the victim to feel fear.  It is robbery if the defendant committed a forcible act against the victim motivated by the intent to steal, even if the defendant did not also intend for the victim to experience force or fear."

Here we conclude the defendants have committed a robbery even though they were unaware of the victim's presence.

Davion Dwayne Jones appeals a judgment following conviction of home invasion robbery, residential burglary (two counts), street terrorism, carjacking, giving false information to a police officer, and unlawful driving. (Pen. Code, §§ 211, 213, subd. (a)(1)(A), 459, 186.22, subd. (a), 215, subd. (a), 148.9, subd. (a)[1]; Veh. Code, § 10851, subd. (a).) The trial court also made findings that Jones suffered prior serious felony and strike convictions, served two prior prison terms (then struck), committed the crimes to benefit a criminal street gang, and was personally armed with a firearm during commission of the crimes. (§§ 667, subd. (b)-(i), 1170.12, subds. (a)-(d), 667, subd. (a)(1), 667.5, subd. (b), 186.22, subd. (b)(1), 12021.5, subd. (a).)

Adolph Washington, Jr. appeals a judgment following conviction of home invasion robbery, residential burglary (two counts), and street terrorism. (§§ 211, 213, subd. (a)(1)(A), 459, 186.22, subd. (a).) The trial court also made findings that Washington suffered prior serious felony and strike convictions, served two prior prison terms, committed the crimes to benefit a criminal street gang, and a principal was armed with a firearm during commission of the crimes. (§§ 667, subd. (b)-(i), 1170.12, subds. (a)-(d), 667, subd. (a)(1), 667.5, subd. (b), 186.22, subd. (b)(1), 12022, subd. (a)(1).)

This appeal concerns robbery and burglary crimes that Jones and Washington, members of the "Front Hood Compton Crips," committed in the Santa Barbara area in 2018, following a catastrophic wildfire and ensuing mudslide. On appeal, Jones

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2

and Washington raise claims of sufficiency of the evidence as well as sentencing errors.  The Attorney General concedes many of the asserted sentencing errors and properly requests resentencing pursuant to *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["full resentencing rule" authorizes trial court to modify every aspect of sentence upon resentencing].  We reject the sufficiency of the evidence claims as requests to reweigh the evidence and draw different inferences therefrom.  The Attorney General also concedes that recent changes to the criminal street gang enhancement law and street terrorism law require remand to the court for limited retrial regarding Assembly Bill No. 333 (AB 333) (Stats. 2021, ch. 699, §§ 1-5).  We reverse and remand for retrial regarding AB 333 and also resentencing pursuant to recent changes in section 654 (Assem. Bill No. 518 (AB 518) (Stats. 2021, ch. 441, § 1)), and *Buycks*, but otherwise affirm.

*FACTUAL AND PROCEDURAL HISTORY*
*July 18, 2018, Burglary of H.H. Residence*
*(Count 4)*

On July 18, 2018, H.H. and her husband were moving from their Goleta home to another home in Los Angeles.  During the process of moving, they left their Goleta home for approximately 24 hours.  When they returned, they found the bedroom closet in disarray, kitchen and desk drawers open, and splintered French patio doors.  H.H. reported the burglary to the Santa Barbara County Sheriff.  Following her interview with a sheriff's deputy, H.H. realized that her computer laptop and cellular telephone were missing; each contained identifying family photographs.

Records from a cellular telephone carrier established that Jones's telephone was in contact with a cellular tower

3

approximately one mile from the H.H. residence as well as points further north that day.

*Home Invasion Robbery and Burglary of S.K. Residence*
*(Counts 1 and 2)*

On July 18, 2018, S.K. lived in Montecito in a neighborhood that had been damaged by a devastating mudslide.  The three homes nearest her home were vacant and a public safety sign warned the public not to enter the area.  A creek behind S.K.'s home still contained mud and debris.

At approximately 10:30 that evening, S.K. was awakened by "pounding" on her locked front door.  Alarmed and sensing that she was in danger, S.K. telephoned the police emergency dispatcher with her landline telephone.  The dispatcher suggested that S.K. lock the bedroom door and hide in the closet until police assistance arrived.  S.K. and the dispatcher remained in telephone contact as S.K. lay in a fetal position on the closet floor.  S.K. urged the police to hurry, informing the dispatcher that the intruders were manipulating the locked bedroom door handle.  S.K. then stated that the intruders were speaking to each other, had violently broken the bedroom door, and were ransacking the bedroom.  S.K. became more frightened and believed her life was endangered.  One intruder then opened the closet door, saw S.K. curled up on the floor, and uttered, "Oh, shit."  S.K. did not look at the man because she feared she would be killed as a witness to his identity.  She pleaded for the dispatcher to help her, informed the dispatcher that an intruder had opened the closet door and saw her, and stated to the

4

dispatcher that "they may kill [her]." At trial, the prosecutor played the recorded emergency call.[2]

Meanwhile, Santa Barbara Sheriff's Deputies Simon Trujillo and Damian Marquez arrived in separate patrol cars which were equipped with mobile audio and visual recorders, relevant excerpts of which were admitted into evidence at trial. Trujillo saw weak lighting inside S.K.'s home that appeared to be a flashlight or a cellular telephone. The deputies announced their presence and Trujillo saw Jones run from the residence. He appeared to be holding a light in one hand and another object in his extended left hand. Behind Jones, Trujillo saw one or two other men, including Washington, who nearly bumped into Jones. Trujillo thought that Jones had a handgun in his left hand and was aiming it toward Marquez. Trujillo then fired a gunshot at the three men who retreated into S.K.'s house and left through the rear door. S.K.'s driveway contained a black-colored Honda Civic automobile that was registered to Jones's girlfriend.

Trujillo requested additional law enforcement assistance, advising that there were three armed suspects. California Highway Patrol officers arrived and found Washington, wearing shorts and a distinctive logo T-shirt, hiding in nearby bushes; he was disheveled and his clothing was muddy. Washington had $298 in his possession as well as his cellular telephone which had driving directions from the area to Compton.

---

[2] The parties have transmitted the exhibit of the recorded emergency call to this court for review. We have listened to the recording. S.K. informs the dispatcher that an intruder uttered "Oh, shit" when he opened the bedroom closet door and saw S.K. The recording also captures the violent breaking of the locked bedroom door.

Sheriff's Sergeant Kenneth Rushing and his canine officer searched for the other suspects. In the creek vegetation, Rushing found a baseball cap and, in the mud, a small-caliber handgun. Rushing later found a second baseball cap, separate tracks in the mud, and mud on a fence in two places, suggesting that two people had scaled the fence.

Two sheriff's detectives joined the search and found two males wearing dirty and disheveled clothing. When the detectives called out to them, one of the men, later determined to be Jones, ran. The second man, minor M.L., stopped. A nearby restaurant security camera captured the detention and Jones's flight. At trial, the prosecutor played the video recording.

The detectives arrested M.L., whose clothing was torn and muddy. During a search incident to his arrest, the detectives found five cellular telephones on M.L., including four belonging to S.K. and her family and one belonging to Jones. Jones's telephone contained photographs of Jones wearing the baseball caps found in the muddy creek as well as a video of him sitting in the front seat of the Honda Civic automobile on the day of the home invasion robbery. In the video, Jones wore the distinctive teddy bear T-shirt that he wore when he fled S.K.'s home and that he carried at the time of his arrest.

Meanwhile, deputies rescued S.K. from her closet. Items missing from her home included four cellular telephones, jewelry, and an inexact amount of cash ("hundreds of dollars") contained in the master bedroom nightstands.[3] Some of the telephones and

---

[3] A police detective testified that S.K. may have informed him that a "rough amount" of $500 was missing from her bedroom nightstands. He expressed uncertainty, however, as to the amount she stated.

jewelry had been in S.K.'s daughter's bedroom and the cash plus a telephone had been in S.K.'s bedroom. S.K. later identified some of the recovered jewelry and the telephones.

*Carjacking*

*(Count 3 - Jones)*

In the afternoon of July 19, 2018, J.D. parked in front of a store in Montecito and left the engine running. He left his key fob, wallet, and cellular telephone inside the vehicle. While J.D. was inside the store, Jones entered the vehicle. J.D. left the store and struggled with Jones over the driver's side door. Losing the struggle, J.D. released the door and Jones drove away. Police later located the vehicle through J.D.'s cellular telephone left inside. Jones had abandoned the vehicle by then.

Jones soon was found hiding in a bush. He lied to the arresting officer concerning his name and birthdate. Jones's pockets contained jewelry later identified by S.K. as that belonging to her daughter. At a field identification and at trial, J.D. identified Jones as the man who took his vehicle.

Sheriff's detectives searched the Honda Civic automobile and found M.L.'s backpack inside the trunk. The detectives also found H.H.'s laptop computer and her cellular telephone inside the vehicle. M.L.'s and Jones's fingerprints were on the outside of the vehicle.

Analysis of the cellular telephone data in Washington's telephone placed him in Montecito near the time of the S.K. residence burglary. Analysis of the data in Jones's cellular telephone placed him near the H.H. and S.K. residences at the time of the burglaries.

7

*Recorded Police Interviews and Jail Telephone Calls*

In a recorded police interview, sheriff's detectives interviewed Washington following his arrest. He admitted that he lived in Compton and arrived in the Santa Barbara area in a black-colored automobile with two other men whose names he did not know. Washington admitted that he entered S.K.'s residence and that he and the two men held pillowcases in which the other two men took items from the home. Washington stated: "[I]t don't take a rocket scientist but you know . . . what was going on, I ain't that stupid." At trial, the prosecutor played the recorded interview.

Jones and Washington made telephone calls from jail which were recorded and played at trial. Jones stated that he was with "two of [his] cousins" who were also arrested and that police officers shot at them when they saw a gun. Jones also referred to the gun in street gang vernacular ("DDP") and used the phrase, "on Crip."

During a jail telephone call, Washington stated that he was "not going to be a gang member no more" and that the person he called should stay away from his (Washington's) gang associates.

*Criminal Street Gang Evidence*

In 2003, during a traffic stop and a later drug investigation, Jones admitted to a Los Angeles County sheriff's deputy that he was a member of the Front Hood Compton Crips. The deputy wrote field identification cards for Jones during each incident. In 2012, a sheriff's deputy saw Washington run with a handgun. The deputy pursued Washington who was then arrested for unlawful possession of a firearm. Washington admitted to the deputy that he was a member of the Front Hood Compton Crips.

8

At trial, Los Angeles County Sheriff's Deputy Orlando Saldana testified as a criminal street gang expert. He stated that Front Hood Compton Crips was a criminal street gang whose members committed robberies, home invasions, burglaries, and murders, among other crimes. Saldana testified that he knew Washington, who admitted to him in 2017 that he was a member of the gang. Saldana reviewed photographs of Washington's and Jones's tattoos and concluded that the tattoos represented their membership in the gang. Saldana also reviewed social media postings of the two men that reflected their gang activities.

*Conviction and Sentencing*

Following a court trial, the court convicted Jones of home invasion robbery, residential burglary (two counts), street terrorism, carjacking, giving false information to a police officer, and unlawful driving. (§§ 211, 213, subd. (a)(1)(A), 459, 186.22, subd. (a), 215, subd. (a), 148.9, subd. (a); Veh. Code, § 10851, subd. (a).) The court also found that Jones carried a firearm, suffered prior serious felony and strike convictions, served prior prison terms, and committed the crimes for the benefit of a criminal street gang. (§§ 12021.5, subd. (a), 667, subd. (a)(1), 667, subd. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b), 186.22, subd. (b)(1).) It sentenced Jones to a determinate prison term of 18 years, plus 115 consecutive years to life, imposed various fines and fees, ordered $13,035.33 in victim restitution (according to the abstract of judgment), and awarded him 780 days of presentence custody credit.

The trial court also convicted Washington of home invasion robbery, residential burglary (two counts), and street terrorism. (§§ 211, 213, subd. (a)(1)(A), 459, 186.22, subd. (a).) The court also found that a principal used a firearm during commission of

9

the crimes, Washington suffered prior serious felony and strike convictions, served prior prison terms, and committed the crimes for the benefit of a criminal street gang.  (§§ 12022, subd. (a)(1), 667, subd. (a)(1), 667, subd. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b), 186.22, subd. (b)(1).)  It sentenced Washington to a determinate prison term of 11 years, plus 70 years to life, imposed various fines and fees, ordered $13,035.33 in victim restitution (according to the abstract of judgment), and awarded him 796 days of presentence custody credit.

Washington and Jones appeal and contend that:  1) insufficient evidence supports the home invasion robbery conviction (count 1); 2) insufficient evidence exists that three persons committed the home invasion robbery (count 1); 3) insufficient evidence exists that they participated in the robbery of S.K.; 4) insufficient evidence supports their convictions of the H.H. burglary; 5) newly enacted legislation, AB 333, requires retrial concerning street gang enhancements and count 5 (street terrorism), and AB 518 requires resentencing to permit the court to exercise new sentencing discretion regarding section 654; 6) the firearm enhancements to counts 1 and 2 do not rest upon sufficient evidence (Jones); (7) the trial court failed to orally impose the $13,035.33 victim restitution order which, in any event, is not supported by sufficient evidence; (8) the trial court erred by imposing fines, fees, and assessments without first determining their abilities to pay; (9) the trial court erred by imposing and staying two prior prison term enhancements pursuant to section 667.5, subdivision (b) (Washington); 10) the trial court improperly imposed 10-year criminal street gang enhancements rather than 15-year minimum parole eligibility terms for count 2; and 11) the trial court abused its discretion by

imposing a $5,000 restitution fine and a stayed $5,000 parole revocation fine (Washington).

## DISCUSSION

### Sufficiency of the Evidence Contentions

### I.

Jones and Washington argue that insufficient evidence of taking S.K.'s property by either force or fear supports their home invasion robbery convictions (count 1). They assert that S.K.'s fear was incidental to the taking of her property, given that she was fearful from the outset. Jones and Washington appear to contend that the opening of the bedroom closet door did not cause S.K. any additional fear.

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." "Fear" includes fear of an unlawful injury to the person robbed. (§ 212.) "To establish a robbery was committed by means of fear, the prosecution 'must present evidence ". . . that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' " (*People v. Morehead* (2011) 191 Cal.App.4th 765, 772.) The law does not require that a defendant intend that the victim experience fear. (*People v. Anderson*, *supra*, 51 Cal.4th 989, 995-996.) The element of fear may be established by evidence that the victim was deterred from preventing the theft or attempting to immediately reclaim the property. (*People v. Flynn* (2000) 77 Cal.App.4th 766, 771 [statement of general rule].)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine

11

whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the trier of fact might have drawn from the evidence although we may have concluded otherwise. (*Rivera*, at p. 331.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) In our review, we focus upon the evidence that was presented, rather than evidence that might have been but was not presented. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

Sufficient evidence and reasonable inferences therefrom establish that S.K. was in fear for her life and that fear allowed defendants to commit the robbery. S.K. repeatedly informed the police dispatcher that she was frightened and thought that defendants might kill her. She stated that they pounded on the front door, broke into her residence, and broke down the master bedroom door. The dispatcher acknowledged that she heard the bedroom door being broken. S.K. lay in a fetal position on the closet floor while defendants ransacked her home and master bedroom. She refused to look at the intruder who opened the closet door in increased fear that he might kill her. S.K. did not

12

attempt to prevent the thefts by answering the door or attempting to reclaim her property. Jones and Washington used fear to take and retain S.K.'s property. S.K. was no match for three younger men who broke down her bedroom door at night and found her hiding in the closet. The home invasion robbery convictions are supported by sufficient evidence.

The act by which the taking is accomplished need not be motivated by an intent to use force against the victim or to "cause the victim to feel fear." (*People v. Anderson*, *supra*, 51 Cal.4th 989, 995.) From this, we conclude that because Jones and Washington were unaware of the victim's presence is beside the point. What matters is that the victim's fear facilitated the robbery.

## II.

Jones and Washington contend that insufficient evidence exists that three persons committed the home invasion robbery (count 1). (§ 213, subd. (a)(1)(A) [home invasion robbery requires defendant to act in concert with two or more persons].) They suggest alternative scenarios for the crime that do not involve three intruders in the master bedroom.

Sufficient evidence and all reasonable inferences therefrom support the finding of three persons committing the robbery. S.K. repeatedly referred to more than one person breaking down her locked bedroom door and entering her bedroom. When one defendant opened her closet door and uttered, "Oh, shit," the three men immediately left the home and nearly bumped into one another in their flight to the automobile parked in the driveway. S.K. informed the dispatch operator that the intruders ran away after one opened the closet door and saw her. A reasonable inference from defendants' hasty flight is that one man informed

the two others that S.K. was present.  We do not substitute our inferences for those drawn by the trial court.  (*People v. Albillar*, *supra*, 51 Cal.4th 47, 60.)

*III.*

Jones and Washington each assert that insufficient evidence exists that they participated in the robbery of S.K. (count 1).

Sufficient evidence supports the conviction of robbery for each defendant.  Jones and Washington violently broke S.K.'s locked bedroom door; S.K. heard more than one man speaking. They and M.L. carried pillow cases in which to place the items taken from S.K., including several hundred dollars and a cellular telephone.  When arrested, Washington carried $298 cash.  As fellow gang members, Jones and Washington were present at S.K.'s residence and drove together to Montecito from Compton. The three men immediately fled together upon finding S.K. in the master bedroom closet.

Moreover, evidence exists that Jones and Washington aided and abetted the home invasion robbery.  (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)  Relevant factors for aiding and abetting liability include presence at the scene, companionship, and conduct before and after the offense.  (*Ibid.*)  It is also a reasonable inference from the evidence that breaking down a locked bedroom door would reveal the presence of an individual inside.  Although the defendants may have believed S.K.'s home was unoccupied and may have been surprised to find her in the closet, it is reasonable to assume that a person may be inside a locked master bedroom.

14

*IV.*

Jones and Washington argue that insufficient evidence supports their convictions of the H.H. burglary as opposed to merely possessing H.H.'s stolen property.

Possession of stolen property alone is not sufficient to support the possessor's conviction of burglary. (*In re D.M.G.* (1981) 120 Cal.App.3d 218, 227.) "When, as here, a defendant is found in possession of property stolen in a burglary shortly after the burglary occurred, the corroborating evidence of the defendant's acts, conduct, or declarations tending to show his guilt need only be slight to sustain the burglary convictions." (*People v. Mendoza* (2000) 24 Cal.4th 130, 176 [statement of general rule].)

Here sufficient evidence supports the convictions. The H.H. burglary occurred a short distance away from the S.K. burglary and in the same time period. Each crime occurred by forcefully breaking doors. Jones, Washington, and M.L. were together that day and drove to the Santa Barbara area in Jones's girlfriend's vehicle. Jones and Washington are members of the same criminal street gang. The girlfriend's vehicle contained H.H.'s laptop and cellular telephone. Jones's cellular telephone also placed him near (within one mile) the H.H. residence that day.[4] The three men fled when confronted by the deputies, abandoning the vehicle with its purloined goods. This evidence, and all reasonable inferences therefrom, constitute more than

---

[4] We grant Jones's two motions for judicial notice concerning the proximity of H.H.'s residence to the freeway and the approximate 10-mile distance between the H.H. and S.K. residences.

"slight" corroborative evidence. (*People v. Mendoza, supra,* 24 Cal.4th 130, 176.)

*V.*

Jones and Washington argue that they are entitled to the ameliorative benefits of AB 333 and AB 518, effective January 1, 2022, regarding changes in proof of criminal street gang enhancements and street terrorism, and in sentencing discretion pursuant to section 654. The Attorney General concedes that the recent legislative changes apply to Jones's and Washington's convictions because their judgments are not final. (*In re Estrada* (1965) 63 Cal.2d 740, 744-746.) As AB 333 increases the threshold for conviction of a section 186.22 offense and imposition of the enhancement, we agree that Jones and Washington are entitled to the benefit of these changes in the law. (*People v. Lopez* (2021) 73 Cal.App,5th 327, 344.)

AB 333 amends section 186.22 in several ways. It modifies the definitions of pattern of criminal activity and criminal street gang and clarifies the evidence required to show a benefit to a criminal street gang. It increases the threshold for conviction of the offense and imposition of the enhancement. Importantly here, AB 333 amends the law regarding predicate offenses and requires a common benefit to the street gang that is more than reputational. (Stats. 2021, ch. 699, § 3.) We remand the matter for a limited retrial to allow the prosecution an opportunity to retry the gang enhancements and street terrorism count and meet its burden of proof pursuant to AB 333's new requirements.

The Attorney General also properly concedes that Jones and Washington are entitled to the benefit of AB 518, permitting the trial court to exercise new sentencing discretion pursuant to section 654. AB 518 amends section 654 by removing the

requirement that a defendant shall be punished under the provision providing for the longest term of imprisonment and granting the trial court discretion to impose punishment under any of the applicable provisions.

## VI.

Jones contends that the trial court based the section 12021.5, subdivision (a) firearm enhancements appended to counts 1 and 2 upon insufficient evidence. The court imposed an upper three-year term to each count for the firearm finding.

At trial, the court found the use of a firearm enhancement within the meaning of sections 12022.5, subdivision (a) and 12022.53, subdivision (b) not proven beyond a reasonable doubt. The trial judge pointed to the testimony of Deputy Trujillo that he was uncertain that Jones held a firearm (as opposed to another object) when he fled S.K.'s residence.

The trial court found, however, that a principal was armed with a firearm pursuant to section 12022, subdivision (a)(1) during the commission of counts 1 and 2. The court also found that Jones was "armed with a firearm in the vehicle" during commission of a street gang crime pursuant to section 12021.5, subdivision (a).

The Attorney General concedes that the firearm finding of section 12021.5, subdivision (a) is not supported by sufficient evidence. Section 12021.5, subdivision (a) punishes: "Every person who carries a loaded or unloaded firearm on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes." The Attorney General points out that there was insufficient evidence that Jones carried a firearm in a vehicle or otherwise during commission of a street gang crime (crimes against S.K.). We agree, strike the section

17

12021.5, subdivision (a) firearm enhancement finding regarding counts 1 and 2, and remand for resentencing.

*Sentencing Contentions*

*VII.*

Jones and Washington argue that the trial court failed to pronounce the $13,035.33 victim restitution to S.K. as stated in the abstracts of judgment. They add that the amount is not supported by sufficient evidence or stated as joint and several liability. Jones and Washington assert that they received ineffective assistance of counsel by failure of their counsel to object.

The Attorney General responds that Jones and Washington have forfeited this argument by not objecting during sentencing, but concedes that the amount is not appropriate because the figure rests upon the probation officer's "bare assertions" at sentencing. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 [restitution order must rest upon rational and factual basis].)

The probation officer advised the trial court of different amounts of victim restitution due S.K., ranging from lost wages of $3,420 to $13,045.43, without further explanation or notice to defendants. The prosecutor briefly stated that the latter amount was for the value of jewelry and cash taken from S.K., but the probation officer did not provide any detail. The court did not impose any amount of victim restitution and retained jurisdiction concerning the matter. The abstracts of judgment, however, reflect $13,035.33 regarding S.K.

As conceded by the Attorney General, the trial court abused its discretion concerning the $13,035.33 restitution due S.K. Jones and Washington were not afforded notice of the increased amount, the amount was not explained or ordered as joint and

18

several liability, and the court did not pronounce the amount of restitution due.  Upon remand, the trial court shall determine the restitution due S.K. after notice to defendants, explanation of the amount, and objections if any.

## VIII.

Jones and Washington argue that the trial court erred by imposing fees, fines, and assessments without establishing their abilities to pay.  (*People v. Dueñas* (2019) 30 Cal.App.5th 1157.)  They concede that they did not object at sentencing and claim that they received ineffective assistance of counsel.

The Attorney General responds that upon remand for resentencing, Jones and Washington may present evidence regarding their inabilities to pay.  (*People v. Santos* (2019) 38 Cal.App.5th 923, 934; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["[A] defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court"].)  We agree with the Attorney General's suggestion, vacate the fees, fines, and assessments, and also remand for this resentencing purpose.

## IX.

Washington contends that the 2020 amendment to section 667.5, subdivision (b) precludes imposition of the two one-year prior prison term enhancements to count 5 (street terrorism) because the offenses underlying the enhancements were not sexually violent offenses.  (Stats. 2019, ch. 590, § 1.)

The second amended information alleged that Washington served prior prison terms pursuant to section 667.5, subdivision (b) for burglary, possession of a firearm by a felon, and unlawful

possession of ammunition.  The trial court found the allegations true, imposed two enhancements to count 5, and then stayed the entirety of sentence for count 5 pursuant to section 654.[5]

The Attorney General correctly concedes that imposition of the prior prison term enhancements was improper.  Accordingly, we strike the findings and imposition of the two prior prison term enhancements and remand for resentencing.

## X.

Jones and Washington argue that the trial court incorrectly added a 10-year prison term to their sentences for count 2 (residential burglary, person present) for the criminal street gang enhancement, rather than imposing the minimum parole eligibility term of 15 years.  The Attorney General concedes.

At sentencing, the trial court imposed and then stayed a prison term of 21 years plus 27 years to life for Washington for count 2.  The court also imposed and then stayed a prison term of 23 years plus 29 years to life for Jones for count 2.  (Washington and Jones each received life sentences pursuant to the "Three Strikes" law.)  Section 186.22, subdivision (b)(5) provides, however, that the 15-year minimum parole eligibility requirement should be imposed rather than a criminal street gang enhancement if a defendant is convicted of a felony punishable by imprisonment for life.  (*People v. Montes* (2003) 31 Cal.4th 350, 353; *People v. Williams* (2014) 227 Cal.App.4th 733, 736-737.)  Accordingly, we strike the 10-year criminal street gang enhancement and instruct the court to resentence Jones and Washington regarding count 2.  (*People v. Buycks, supra,* 5 Cal.5th 857, 893.)

---

[5] Earlier, the trial court struck the prior prison term enhancements regarding Jones.

20

## XI.

Washington complains of the imposition of a $5,000 restitution fine and stayed $5,000 parole revocation fine as opposed to the similar $4,000 fines imposed upon Jones. (§§ 1202.4, subd. (b), 1202.45.)  Washington concedes that he failed to object and claims he received the ineffective assistance of counsel.  Inasmuch as we are remanding the matter for resentencing regarding fines, fees, and assessments as discussed herein, Washington may argue the amounts of restitution fine and stayed parole revocation fine in the trial court.

## DISPOSITION

The judgments are reversed and the matters remanded for 1) limited retrial regarding AB 333 and the criminal street gang enhancements and street terrorism count, and 2) resentencing as set forth herein.  The judgments are otherwise affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.

21

Brian E. Hill, Judge

Superior Court County of Santa Barbara

———————————————

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant Davion Jones.

David Andreasen, under appointment by the Court of Appeal; California Appellate Project for Defendant and Appellant Adolph Washington.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie A. Miyoshi and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.